IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**HASAAN RAKEEM HAGLER,**

    **Plaintiff,**

v.                                                      Case No.:    3:19-cv-00545

**WSAZ NEWSCHANNEL 3,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are a *pro se* Complaint filed by Plaintiff Hasaan Rakeem Hagler ("Plaintiff") against Defendant WSAZ NewsChannel 3, which is owned and operated by Gray Television Group, Inc., ("Defendant"), (ECF No. 2), and Defendant's Motion to Dismiss the Complaint, (ECF No. 8). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the materials supplied by the parties and finds the issues to be clear. As such, the Court concludes that oral argument is unnecessary. For the reasons set forth herein, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss, (ECF No. 8), be **GRANTED**; that Plaintiff's Complaint, (ECF No. 2), be **DISMISSED**, with prejudice; and that this action be removed from the docket of the Court.

I. **Relevant Facts**

On July 5, 2019, four criminal complaints were sworn against Plaintiff in the Magistrate Court of Cabell County, West Virginia, which alleged that Plaintiff sexually assaulted a female victim on June 29, 2019 in the basement laundry room of a housing complex in Huntington, West Virginia. (ECF No. 8-1). According to the complaints, the victim reported to authorities that Plaintiff displayed a "carpet cutter utility knife type cutting instrument" and said, "you should have just gave me what I wanted earlier," before repeatedly sexually assaulting her. (*Id.*). The Magistrate found that there was probable cause to charge Plaintiff with four counts of sexual assault and issued a warrant for Plaintiff's arrest. (*Id.*). Five days later, on July 10, 2019, Plaintiff was booked in the Western Regional Jail and Correctional Facility, and his bond was set at $200,000.00. (ECF No. 8-2).

> On July 11, 2019 at 4:24 p.m., Defendant published an article stating:
>
> A man from Huntington was arrested on sexual assault charges in connection with an incident in late June, Cabell County court records show.
>
> Hasaan Rekeem Hagler, 29, of Huntington, faces four counts of first-degree sexual assault. He was arrested July 5.
>
> Investigators say the incident happened June 28 at a home in the 400 block of Linden Circle. Hagler allegedly held a cutter-type knife and told the woman, "You should have just gave me what I wanted earlier." Investigators say Hagler then proceeded to sexually assault the victim.
>
> Hagler was taken to the Western Regional Jail. His bond is $200,000.

(ECF No. 8-3) (hereinafter referred to as "the article").

Plaintiff filed the instant Complaint six days after the article was published. (ECF No. 2). The Complaint contends that on July 11, 2019 at approximately 4:30 p.m. Defendant "willingly published and mass produced an article filled with both mis-

2

information and out right lies, that have not only destroyed [Plaintiff's] boxing career, but [his] life and future as well." (*Id*. at 4). Plaintiff seeks damages in the amount of ten million dollars for the alleged defamation of his character. (*Id*. at 5).

Defendant filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8). Defendant asserts that the information contained in the article was taken entirely from official court records and police records, and therefore was protected by the "fair report privilege" under West Virginia law. (ECF No. 9 at 1). In addition, Defendant argues that Plaintiff fails to identify a mistake of fact in the article, or indicate how Defendant was negligent in publishing the information, which is required to allege defamation. (*Id*.). Defendant attached to its motion copies of the official records that it purportedly referenced for the article, including Plaintiff's criminal complaints, the inmate locator fact sheet from the former West Virginia Regional Jail and Correctional Facility Authority website, and the article at issue from Defendant's website. (ECF Nos. 8-1, 8-2, 8-3).

Plaintiff filed a response to Defendant's Motion to Dismiss, disputing the source of the information in the article. Plaintiff asserts that Defendant "interviewed someone who drug [Plaintiff's] name and reputation through the mud, and then broadcasted it on TV and social media websites as if it were undisputed truth before [Plaintiff] was even arrested or incarcerated." (ECF No. 11 at 1). Plaintiff also lists what he argued are two factual errors in the article. First, he notes that he was not arrested and incarcerated on July 5, as stated in the article, but he rather turned himself in on July 10 after hearing that there was a warrant for his arrest. (*Id*. at 1-2). Second, Plaintiff argues that Defendant's article alleged that Plaintiff held a knife or bladed weapon in the commission of the alleged assault, and Plaintiff states "that also never happened." (*Id*. at 2). Plaintiff contends that,

3

in his view, the article presented the allegations against him as if they were facts rather than accusations, and the false light destroyed his life. (*Id*.). He further posits that the false accusations against him could easily have been overcome once his trial ended and he was acquitted. (*Id*.).¹

Defendant's reply to Plaintiff's response emphasizes the point that Plaintiff does not, and cannot, dispute that Defendant correctly reported the information contained in the official records. (ECF No. 13 at 1). Defendant denies that it interviewed anyone as a source of information for the article and maintains that the article was taken nearly verbatim from Plaintiff's criminal complaints. (*Id*. at 1-2). In terms of the discrepancy regarding the manner and date of Plaintiff's arrest, Defendant notes that the arrest warrant was issued July 5, 2019 and the fact that Plaintiff may have turned himself in on July 10, 2019 is immaterial to Plaintiff's defamation claim because Plaintiff was indeed charged with the alleged sexual, which was the "sting" of the article. (*Id*. at 2); s*ee* (ECF No. 8-1). On that point, Defendant notes that minor inconsistencies do not give rise to a defamation claim when the substance of the alleged defamatory content is substantially true. (ECF No. 13 at 2). Further, Defendant identifies that the statement that Plaintiff allegedly held a carpet cutter-type knife is a recitation of what is stated in the criminal complaints, which falls within the fair reporting privilege. (*Id*. at 3 n.2). Regarding Plaintiff's claim that Defendant indicated that he was "already guilty," Defendant argues that courts consistently recognize that fair and accurate reporting of a person's arrest is protected by the fair report privilege and is not tantamount to reporting that the person

---

¹ The undersigned notes that Plaintiff was not acquitted. Rather, he was indicted for the alleged crime and remains incarcerated in the Western Regional Jail pending trial. https://www.herald-dispatch.com/news/recent_news/indictments-june-cabell-county-grand-jury/article_ef1846ce-1e41-6a6-a354-c81cf254dab6.html; https://apps.wv.gov/OIS/OffenderSearch/RJA/Offender/Search (last accessed Jan. 13, 2020).

4

was convicted. (*Id.* at 3). Finally, Defendant points out that news organizations are entitled under the law to report arrests at the time that they occur, and the media is not required to defer reporting until the conclusion of the criminal case. (*Id.*).

## II. **Standard of Review**

Defendant seeks dismissal of Plaintiff's Complaint under Rules 8 and 12(b)(6) of the Federal Rule of Civil Procedure. Rule 8(a) requires a complaint to include "a short and plain statement of the claim … showing entitle[ment] to relief," Fed. R. Civ. P. 8(a)(2), while Rule 12(b)(6) allows a party to assert, as a defense, that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a compensable claim when, viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court explained the "plausibility" standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While the court is required to accept as true the factual allegations asserted in the complaint, it is not required to accept the legitimacy of "a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S at 555).

5

Courts must liberally construe *pro se* complaints, like the one filed in this action. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading "to include claims that were never presented," *Parker v. Champion,* 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Matters outside of the pleadings are generally not considered in ruling on a motion to dismiss. *Williams v. Branker,* 462 F. App'x 348, 352 (4th Cir. 2012). If a court considers matters outside of the pleadings, then "the motion must be treated as one for summary judgment," and the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Nonetheless, when ruling on a motion to dismiss, courts may also consider "documents that are explicitly incorporated into the complaint by reference," as well as a document attached by the movant "so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). Moreover, "courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most

6

favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013) (quoting *Papasan v. Allain,* 478 U.S. 265, 283 (1986)).

In this case, the documents attached to Defendant's Motion to Dismiss, including the article at issue, Plaintiff's criminal complaints, and the information from the correctional facility's website, are integral to the pleadings, and Plaintiff does not challenge their authenticity. Consequently, the undersigned has relied upon them in making findings of fact relevant to the Motion to Dismiss.

### III. Discussion

"The Court evaluates a defamation claim by applying state substantive law and federal procedural law." *Dynamic Campus Sols., Inc. v. Pfeiffer Univ.*, No. 1:17CV906, 2018 WL 2248534, at *3 (M.D.N.C. Apr. 20, 2018), *report and recommendation adopted,* No. 1:17CV906, 2018 WL 2248428 (M.D.N.C. May 16, 2018). In West Virginia, allegations of libel or slander are prosecuted under the broad category of defamation. *Workman v. Kroger Ltd. P'ship I*, Case No. 5:06-cv-0446, 2007 WL 2984698, *4 (S.D.W.Va. Oct. 11, 2007) (citing *Greenfield v. Schmidt Baking Co., Inc.*, 485 S.E.2d 391, 399 (W. Va. 1997)); *Belcher v. Wal-Mart Stores, Inc.*, 568 S.E.2d 19, 26 (W. Va. 2002). The "essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983). Below, the undersigned discusses, in additional detail, the elements that are most relevant to the matter at hand.

With respect to the first element, a statement is defamatory if it tends to "reflect shame, contumely, and disgrace" upon an individual, or "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* (quoting Restatement (Second) of Torts § 559 (1977)); Syl. pt. 1, *Sprouse v. Clay Commc'n, Inc.*, 211 S.E.2d 674 (W. Va. 1975). At common law, a statement is defamatory *per se* if its defamatory meaning is readily apparent on its face, or if the statement falls into one of the traditional slander *per se* categories: imputation of (1) a crime of moral turpitude; (2) a loathsome disease; (3) a matter affecting the plaintiff's business; or (4) unchastity. *See Mauck v. City of Martinsburg*, 280 S.E.2d 216, 219 n.3 (W. Va. 1981).

Regarding the second element of a defamation claim, the Supreme Court of Appeals of West Virginia ("SCAWV") extends a fair report privilege, the details of which are "best summarized in § 611, *Restatement (Second) of Torts* (1977), which provides as follows:

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

*Hinerman v. Daily Gazette Company, Inc.*, 423 S.E.2d 560, 578 (1992). To qualify under the fair report privilege, the publication must be fair and accurate. *Id.* It need not be exhaustive, or a verbatim account of the proceeding, but the publication must not omit or misplace official content, or include additions, in such a manner "as to convey an erroneous impression to those who hear or read it." *Id.* (quoting § 611, *Restatement (Second) of Torts* (1977)). Critically, "'accuracy' for fair report purposes refers only to the factual correctness of the events reported and not to the truth about the events that

8

actually transpired.'" *Cruse v. Frabrizio*, No. 3:13-cv-18768, 2014 WL 3045412, at *9 (S.D.W. Va. July 2, 2014) (quoting *Yohe v. Nugent,* 321 F.3d 35, 44 (1st Cir. 2003)). The fair report privilege, being a qualified privilege as opposed to an absolute privilege, "can be lost where, with actual malice, the press plainly adopts that defamatory statement as its own," *Chapin v. Knight–Ridder, Inc.,* 993 F.2d 1087, 1098 (4th Cir. 1993), or by the defendant's reckless disregard for the truth. *Reuber v. Food Chem. News, Inc.,* 925 F.2d 703, 714 (4th Cir. 1991).

Turning to the third element of a defamation claim, the SCAWV recognizes what is often called the "substantial truth doctrine," stating:

> The law of libel takes but one approach to the question of falsity, regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth. Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.

Syl. pt. 4, *Suriano v. Gaughan*, 480 S.E.2d 548 (W. Va. 1996).

With these standards in mind, the undersigned analyzes Plaintiff's allegations against Defendant. As indicated above, the core of a defamation claim is a false statement. A statement cannot be defamatory if it is true. Plaintiff's Complaint does not identify the specific statements in the article that he contends are untrue. (ECF No. 2). However, in response to Defendant's Motion to Dismiss, Plaintiff identifies two alleged false statements. First, Plaintiff claims that the article incorrectly stated that he was arrested on July 5, 2019 when he actually turned himself in on July 10, 2019. As explained above, defamation law overlooks minor inaccuracies and focuses on whether the substance of the alleged defamatory content was true. For instance, the SCAWV reviewed a defamation case in which the petitioner contended that the respondent incorrectly published that the

9

petitioner was arrested for possession of cocaine when he was in fact arrested for possession of hydrocodone. *Walters v. City of Kenova*, No. 17-0451, 2018 WL 2174129, at *1 (W. Va. May 11, 2018). The SCAWV explained that "[b]oth hydrocodone and cocaine are Schedule II narcotics," and "under West Virginia law, there is no distinction with respect to the punishment for the unlawful possession of hydrocodone or cocaine." *Id.* at *4. The court continued, stating "[t]hus, even if the post alleged petitioner's arrest was for the unlawful possession of cocaine, there would have no different effect on the mind of the average reader. Hence, the alleged minor inaccuracy in the post did not rise to the level of 'falsity' because the substance of the claim was accurate." *Id.* Accordingly, the SCAWV found that because the petitioner could not establish the required element of falsity, he could not establish that he was defamed. *Id.*

Similar logic applies in this case. The article reported that Plaintiff was arrested on July 5, 2019 on four counts of first-degree sexual assault charges. Plaintiff does not dispute that he was charged with the crimes described in the article, nor does he disagree that a warrant was issued for his arrest. Therefore, the precise detail that Plaintiff may have turned himself in on July 10, 2019 upon hearing of the warrant would not have reasonably produced a different effect on the reader because "the substance, the gist, the sting" of the article was, without question, the fact that Plaintiff was charged with allegations of brutal sexual assault. Consequently, Plaintiff fails to establish the required element of falsity as a matter of law regarding the statement in the article that Plaintiff was arrested on July 5, 2019. Syl. pt. 4, *Suriano*, 480 S.E.2d 548 ("A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.").

The second statement in the article that Plaintiff claims is false is the reference that "mentioned a knife or bladed weapon," a fact which Plaintiff states, "never happened." (ECF No. 11 at 2). In order to establish defamation, Plaintiff must show that the supposed defamatory statement was not privileged communication to a third party. *Crump*, 320 S.E.2d at 77. Defendant was legally permitted under the fair report privilege to publish information from "an official action or proceeding or of a meeting open to the public that deals with a matter of public concern," so long as it did so fairly and accurately. *Hinerman, Inc.*, 423 S.E.2d at 578. Defendant's article stated that Plaintiff "allegedly held a cutter-type knife." (ECF No. 8-3). The criminal complaints likewise specified that the victim told authorities that Plaintiff "displayed a 'carpet cutter' utility knife type cutting instrument" in the commission of the crime. (ECF No. 8-1).

Thus, the statement in Defendant's article concerning the weapon falls squarely within the fair report privilege, because it fairly and accurately recounted information from the official criminal proceeding. The factual issue of whether Plaintiff held the weapon is irrelevant to the defamation analysis. *Cruse*, 2014 WL 3045412, at *2–3 (stating that if the statement falls within the fair report privilege, it is unnecessary to evaluate the other elements of a defamation claim, including whether the information was false). Rather, for purpose of the fair report privilege, the issue is whether Defendant fairly and accurately reported the criminal proceeding, not whether the information was true. Defendant stated that Plaintiff *allegedly* held a cutter-type knife, which is a fair and accurate depiction of the criminal complaints. Defendant did not adopt the statement as its own, nor does Plaintiff assert any factual allegations that Defendant recklessly disregarded the truth such as to relinquish Defendant's qualified fair report privilege. Therefore, Defendant's reference in the article to Plaintiff holding a weapon is shielded

11

by the fair report privilege under West Virginia law, and Plaintiff fails to state a defamation claim against Defendant based on that statement.

Finally, addressing Plaintiff's overarching claim that Defendant's article imparted his guilt, Plaintiff fails to show that the article misrepresented any of the allegations against Plaintiff as if they were established facts. The article used unmistakable sentence modifiers such as stating that "court records show," "[i]nvestigators say," and Plaintiff "allegedly" committed the acts described by the investigators. It is difficult to envision how Defendant could have more clearly expressed that it was reporting criminal charges, as opposed to a criminal conviction or proven facts. Moreover, Defendant was under no obligation to delay reporting Plaintiff's criminal charges until the conclusion of his criminal case, as Plaintiff suggests. Defendant was fully within its legal rights to fairly and accurately report the public details of Plaintiff's official proceeding. The law does not impose a duty on media defendants to investigate the accuracy of official reports of criminal proceedings. *Cruse*, 2014 WL 3045412, at *10. "Indeed, the fair report privilege 'has traditionally stopped short of imposing extensive investigatory requirements on a news organization reporting on a governmental activity or document,' as such a duty would obviate the need for and purpose of the fair report privilege." *Id.* (quoting *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 712-13 (4th Cir. 1991)). Consequently, for all of the above reasons, Plaintiff's Complaint does not state a plausible defamation claim against Defendant, and thus should be dismissed.

## IV. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the findings herein and **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's Complaint, (ECF No. 8), be **GRANTED**;

that Plaintiff's Complaint, (ECF No. 2), be **DISMISSED**; and this action be removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, Defendant, and counsel of record.

**FILED:** January 15, 2020

Cheryl A. Eifert
United States Magistrate Judge